[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of New Haven. Many of facts that give rise to this action are not in dispute. The plaintiff whose birth name is Amie Ziner and the defendant were married at Dobbs Ferry, New York on October 6, 1979. At least one of the parties has resided continuously in the State of Connecticut for at least 12 months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospect of reconciliation. There are two minor children issue of this marriage, Jennifer Ellen Mills born February 13, 1987 and Michael William Mills, born May 30, 1991. No other minor children has CT Page 13641 been born to the plaintiff wife since the date of marriage of the parties. Neither party has received state assistance.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented the court finds that each party is equally at fault for the breakdown of the marriage.
The plaintiff was born on June 6, 1958. The plaintiff suffers from moderate to severe asthma for which she takes daily medication. She also has goiter problems. The plaintiff was born on June 6, 1958. The plaintiff is employed by the American Institute of Architecture. Her monthly work average is approximately 6 days per month for five hours per day. She had been employed in that position for approximately 14 months. The hourly rate for her position is between $8.00 to $12.00 per hour. She would gross a maximum of $400.00 weekly in the event she were working full time. When the parties were first married the plaintiff was working full time as an art director in a position that she had held for approximately 10 years. Her annual salary at the time of marriage was approximately $28,000.00. At the present time she can earn approximately $15,000 to $18,000 working full time as a secretary.
When the parties married the plaintiff was 21 years old. She had completed one year of college. The plaintiff had dropped out of college prior to the time the parties married. Up to approximately a 1 1/2 years ago she did free-lance and some part-time work earning approximately $1,000.00 to $2,000.00 annually. She returned to work approximately a 1 1/2 years ago. She returned to college approximately 4 years ago. She attends Goddard College in Plainfield, Vermont. Most of her college work is done at home. She is working towards obtaining her masters degree in fine arts in Interdisciplinary Arts. Her goal is to become a full-time school teacher or work in an architectural firm. She took out college loans to pay for tuition and other expenses. Her loans total approximately $8,000.00 annually for each of three years and were used towards her bachelor degree. Her loan presently amount to approximately $10,500.00 annually and is used towards her masters degree. The repayment of her loans will commence six months after graduation. Her anticipated graduation is August 2000. At the present time she has a liability to student assistance corporation in the amount of $38,400.00 for outstanding college loans. She will incur an additional approximate $10,500.00 annually for each of the next two years leading up to graduation. The loans are interest free CT Page 13642 until August of 2000. Interest will then start at the rate of 7 or 8% commencing six months after graduation. She obtained her bachelor's degree in August of 1997. She needs a masters degree in order to be able to obtain employment in the publishing or advertising field. She should be able to earn in the $30,000.00 gross annual range after graduation. The plaintiff is in residence in her college course approximately 8 days for each of two semesters or a total of 16 days per year. She pays an average of $20.00 weekly per child for room and board for a total of $40.00 weekly per child for an annual total of approximately $640.00 during the 16 days annually that she is in residence. In addition she has daycare costs for the children. Her current college expenses consist of approximately $8,000.00 annually for tuition, plus an additional $1,100.00 to $1,200.00 annually for a residency fee. She also has annual books and other college supplies of approximately $800.00. She borrowed approximately $28,000.00 to complete her undergraduate degree.
The plaintiff had an average of $1,500.00 to $2,000.00 left over annually from her student loans that was used towards paying bills.
The cost for cobra benefits for the plaintiff not including dental is $45.00 weekly The plaintiff's occupation is that of a artist/writer. Her employment consists of graphics, prints, multimedia production and desktop publishing. Her present gross weekly income of $126.92 is the amount that she has been earning since January 1998.
The parties received a discharge in bankruptcy in May of 1997. The plaintiff's student loans were not dischargeable. At the time of their bankruptcy they had approximately $28,000.00 in credit card debts. A foreclosure was commenced against a home they owned when they were involved in bankruptcy. The parties had purchased a family home in 1988 and had owned it for approximately 8 years before it was lost through a foreclosure action. When the parties went through bankruptcy the defendant was leasing a motor vehicle. He did not discharge that lease in bankruptcy. The vehicle was eventually repossessed.
The defendant is employed as an architect. His gross weekly, income is $1,038.46. He has federal withholding of $94.80 weekly, FICA of $60.22 weekly, and state withholding of $43.38 weekly and medicare withholding of $13.98 weekly for total deductions of $212.38 and net weekly wages of $826.08. He also has overtime CT Page 13643 work with his employment with a gross weekly average of $71.75 and deductions for taxes of $16.50 weekly. In addition he does some freelance work with an average gross weekly income of $76.92 and deduction for taxes of $26.92. He also receives a bonus with a gross weekly average of $14.42 and weekly taxes of $3.32. His combined net weekly income is $942.43. He owns a 1988 Honda with a value of $3,900.00. He has clothing and personal items with a nominal value. He owns a one-half interest in a 1955 Pearson Sailboat which one-half interest has a value of $3,000.00. He has $600.00 in his Fleet Bank account. His deferred compensation plans consist of a Privileged Assets IRA with a value of $2,874.23, Northwest Mutual with a value of $143.00, and SEP Savings with a value of $2,045.45. SEP is a Simplified Employer Pension. He commenced those savings in November of 1997 and continued in that plain until May of 1998 when he stopped his participation in the plan. The defendant has term life insurance through Northwest Mutual in the fact amount of $200,000.00. The defendant commenced his present employment in October of 1995. His gross annual salary in the calendar year 1996 was $40,162.83. His gross annually salary in the calendar year 1997 was $46,934.21. The defendant received a bonus in 1995 of $250.00. In 1996 he received a bonus of $500.00. In 1997 he received a bonus of $750.00. His financial affidavit shows a weekly bonus of $14.42. That represents the $750.00 that he received in December of 1997. The gross weekly free-lance income of $76.92 shown on his financial affidavit represents the free-lance income that he received from October 1, 1997 to October 1, 1998. The $6,000.00 liability that he has to People Bank shown on his financial affidavit dated October 20, 1998 was incurred when he purchased the 1988 Honda vehicle that he now owns. He pays $46.51 weekly on that debt. His financial affidavit shows a weekly expense of $2.18 for auto and boat tax. That is an expense that is only for automobile tax. The defendant earns $25.00 hourly when he does free-lance work. He has an average weekly expense for transportation for gas and oil of $23.00. That does not include his transportation expenses that are business related for which he is reimbursed by his employer and that reimbursement is also not shown on his financial affidavit. His financial affidavit shows a gross weekly life insurance premium of $31.74. That premium also includes his costs for disability insurance. His costs for health insurance for himself and the children after divorce will be $22.51 weekly.
The defendant was born on November 2, 1950. When the parties married the defendant already had his license to be an architect. CT Page 13644 In the last 24 years all of his employment has been architecturally related. He was unemployed for approximately 2 1/2 years between 1991 and 1993.
The parties entered into a joint parenting agreement dated July 20, 1998 which the court finds is in the best interest of the minor children and approves of that agreement and enters order in accordance with that agreement. While the parties have had many disagreements throughout this trial, they have been able to set aside their personal disagreements and reaching the joint parenting agreement for the best interest of their children for which the parties are to be commended. The court finds that the amount of support due from the defendant to the plaintiff in accordance with the child support guidelines is $289.00 weekly. The financial orders hereinafter entered are based in part on the plaintiff's actual earnings and not her earning capacity.
This court has considered the provision of Section 46b-82
regarding the issues of alimony, and has considered the provisions of Section 46b-81(c) regarding the issues of property division, and have considered the provision of Section 46b-56
regarding the issues of custody and visitation, and has considered the provision of Section 46b-84 and the child support guidelines regarding the issue of support, and have considered the provision of Section 46b-62 regarding the issue of attorney's fees. The court enters the following orders:
A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
1. The defendant is ordered to pay to the plaintiff alimony in the sum of $80.00 per week. Alimony shall terminate upon the earliest of the following events:
a. The death of the plaintiff.
b. The death of the defendant.
c. The remarriage of the plaintiff.
2. The defendant is ordered to maintain $50,000.00 of life CT Page 13645 insurance for the benefit of the wife. Said obligation terminates when the obligation to pay alimony terminates.
3. The provisions of Section 46b-86(a) and 46b-86(b) are applicable.
4. An immediate wage execution is authorized regarding the alimony payment.
5. The defendant is to give to the plaintiff written proof commencing January 1, 1999 and annually thereafter that said life insurance is in full force and effect.
C. BY WAY OF CUSTODY AND VISITATION
1. The agreement entered into between the parties dated July 20, 1998 and coded 112 is approved of and orders are entered in accordance with that agreement.
D. BY WAY OF SUPPORT
1. The defendant is ordered to pay to the plaintiff support in the amount of $289.00 per week which is substantially in accordance with the child support guidelines. An immediate wage execution is authorized regarding the support payment.
2. The defendant is to maintain medical insurance coverage for the minor children. The parties are to share equally the payment of any unreimbursed medical or dental expenses incurred on behalf of the children. The defendant is ordered to maintain $50,000.00 of life insurance for the benefit of each child. Said obligation terminate when each reaches age 18.
3. The defendant is to give to the plaintiff written proof commencing January 1, 1999 and annually thereafter that said life insurance is in full force and effect.
E. BY WAY OF PROPERTY ORDERS
1. The plaintiff is to hold the defendant harmless on her Student Assistance Corp. loans.
2. The defendant is to hold the plaintiff harmless on his People's Bank MasterCard loan. CT Page 13646
3. The 1988 Honda shown on the plaintiff's financial affidavit is awarded to the plaintiff.
4. The 1988 Honda shown on the defendant's financial affidavit is awarded to the defendant.
5. All of the "other personal property" shown on the plaintiff's financial affidavit if awarded to the plaintiff.
6. All of the "other personal property" shown on the defendant's financial affidavit is awarded to the defendant.
7. The Webster Bank checking account shown on the plaintiff's financial affidavit with a $100.00 balance and the cash of CD from $500.00 shown on her financial affidavit is awarded to the plaintiff.
8. The Fleet Bank Savings with a balance of $500.00 and Fleet Bank checking with a balance of $100.00 shown on defendant's financial affidavit is awarded to the defendant.
9. The deferred compensation plans shown on the defendant's financial affidavit are ordered divided equally between the parties by QUADRO. Counsel for the plaintiff is to prepare the QUADRO.
F. BY WAY OF ATTORNEY'S FEES
1. No Attorney's fees are warranted in favor of either party.
G. PENDENTE LITE ORDERS
1. Pendente Lite Orders remain in effect until the date this decision is filed. Any arrearage that may exists arising out of such orders are not merged into the judgment.
H. MISCELLANEOUS ORDERS
1. Counsel for the plaintiff is to prepare the judgment file within thirty days and sent to the counsel for the defendant for signature and filing.
2. The parties are to exchange copies of their federal and state income tax return by certified mail, return receipt, or registered mail, return receipt, within 15 days after such CT Page 13647 returns have been filed for so long as there is any outstanding alimony and/or support orders or any outstanding arrearage of any such order.
3. The plaintiff is restored her birth name of Amie Ziner.
4. The defendant is to return to the plaintiff the roof rack for her vehicle within thirty days from today's date.
Axelrod, J.